This video was made in Cooperation with the MAPLEHURST BAKERIES in Cooperation with the MAPLEYEHURST cannot deny that because they assert entitlement to reduced reimbursement rates demonstrating there has to be a contract between the two parties There are two different things here and I could still be confusing them because it's so complex You stand in the mother's shoes to get paid from the mother's health plan at all and you stand in your own shoes with respect to an insurance company where you're a preferred provider for what your rate of pay is A preferred provider doesn't get nicked for as much I can't remember what their terms are but basically they knock more money off the bill if you're not a preferred provider You're a preferred provider so you get paid at the better rate instead of the worse rate but you don't have any right to get paid at all under a preferred provider contract All you have a right to is the better rate from the insurance company and it looks to me as though this isn't a fight about the rate It's about a fight about whether you get paid Your Honor, the point I'm not making here apparently is I don't have to sue in Michelle Nieves' shoes I don't have to sue on the plan This Court in Laborers v. Doctors Medical Center just handed down in August held where a provider has chosen to sue on its preferred provider agreement it is not pursuing a claim for benefits under the plan You may be a preferred provider for Blue Cross Blue Shield If I have my insurance with a different company say State Farm now sells medical insurance then even though you're a preferred provider you don't have a right to get paid at all from Blue Cross for my medical care But the difference, Your Honor, is that there is a contractual relation If I go to your hospital and State Farm leaves you high and dry you can't go to Blue Cross on the ground that you're a preferred provider if I have State Farm Medical We don't have that situation here Well, when you say you're not standing in the mother's shoes that's what it means to me You must mean something else The cases are quite clear that if there is coverage under the plan and that's not disputed Michelle Nieves was a dependent of an employee and trauma care was covered Never disputed The plan is irrelevant thereafter Yeah, and the only person that got medical care was the little girl The only person who was liable for the money was the mother The mother had a claim against her own insurance company She assigned that claim to you Incorrect To the hospital Mabelhurst is directly liable to the hospital pursuant to the preferred provider agreement and the plan references that What words are you saying in the preferred provider agreement say what you need them to say?  No, Your Honor Your Honor, the Mabelhurst plan in the record at page 223 distinguishes between preferred providers and non-preferred providers We got four different contracts here Which contract are we looking at? I'll look at all four of them, Your Honor I tried to submit Let's look at the one you were just looking at I know there are four Very simple question Just tell me which of the four Okay, we'll look at the Mabelhurst employee plan Okay In the record at page 223 preferred providers agree to accept the negotiated rate as payment in full It is that agreement and it is the negotiated rate that my claim is based on That's just what I just asked you about I'm sorry That's just what I just asked you about All it's talking about is the rate Not if And that's all that's at issue in this case If you render medical care to somebody who is not covered by this by a policy for the medical care rendered then it really wouldn't matter what the deal was on the rate Absolutely agreed, Your Honor There has to be coverage under the plan And the cases make clear that if there is a dispute about coverage under the plan then you're talking about the plan We are not talking about Are you saying that See, if you were saying I'm standing in the mother's shoes and our dispute is about they're only reimbursing us for the non-preferred provider rate and we want to be reimbursed at the preferred provider rate then I can understand your argument that the contract that matters is the preferred provider contract But I understood you to say no, we're not standing in the mother's shoes And it's not just a dispute about whether we get the preferred provider rate Your Honor, we are not standing in the mother's shoes If we were standing in the mother's shoes, we would be suing essentially in her name Okay Well, you got an assignment from her, did you not? Yes You're just saying you're not relying on her Exactly And the cases hold that if we elect not to rely on the assignment which we elected to do once this two-year suit limitation clause came up then we are free to pursue our state law claims based on the preferred provider agreement directly between the hospital and the payor Okay, and now that gets back, I think, to Judge Beeser's question and that is, quo worento Who had the authority to bind Maplehurst to this contractual obligation that the contract is seeking to enforce? Benecorp, their third-party administrator Okay, now can you walk me through the contract so that I can understand how we get from the hospital back down to the employer Okay, Your Honor, the agreement between Maplehurst and its TPA states that I believe section 3.5 Well, if you use initials, tell us exactly what that contract says and what page in the record you're referring to so we can look at the language I am referring to the agreement between Benecorp, which is the third-party administrator for the plan and their agreement with the preferred provider organization Hospital, right? No, it's one step removed Is this the Benecorp-CNN agreement? Correct Okay, and that's in the record beginning at page 115 Okay In section 1.05, it says, preferred providers are health care facilities and professional care providers with which CCN, that's the preferred provider organization, contracts for the provision of health care services or benefits pursuant to this agreement Okay It is this agreement that Michelle Nieves received trauma care under No, no, no Yes, I'm sorry, Your Honor That's precisely what is held in Meadows and in Cedars-Sinai, that there are two avenues I could stand here under assignment, but if I did, I would have the two-year provision to fight with I can throw that overboard There is a case, I wish I had the name of it, where they sued under assignment It was dismissed They refiled under their preferred provider agreement The res judicata defense was dismissed by the court and said, no, this is an independent, direct claim on the preferred provider agreement, and the plan falls out You've referred several times to a bunch of cases that say that That anesthesia case, I didn't think, did the trick for you Could you give me another one? Well, the very best, there are two cases, Your Honor, I would call your attention to Laborers v. Doctors Medical Center, that's this Ninth Circuit, you decided in August That is the one that holds where a provider chooses to sue on his preferred provider agreement, it is not pursuing a claim for benefits under the plan And if I'm suing on my preferred provider agreement, and I am not pursuing a claim for benefits under the plan Then procedural rules applicable to a claim for benefits under the plan are inapplicable So if I understand your theory, your theory is that the only thing that the employer plan does Is to identify the class of beneficiaries who are entitled to services of the preferred provider And to the extent that you're relying on that document at all, that's it You're simply pointing to the fact that Michelle's mother worked for the bakery company And under the plan, she's covered  Was Michelle Nieves eligible? Yes, because she was a dependent of an employee Was there coverage for trauma care? Yes If she had gone in for cosmetic surgery, there probably wouldn't be If her mother had quit their job the day before, perhaps there wouldn't be But there is eligibility, there is coverage, it has never been disputed Okay, so to go back, I know it takes a long time to answer the question Because you've got to go through all four contracts But let's go back to my pending question and Judge Beezer's agency question Okay, there is an agreement you pointed to between Benecor and CNN I see that language I still have the unanswered Judge Beezer question, which is How do we know that Benecor was authorized and empowered as the agent of Maplehurst To enter into this contract to bind Maplehurst? Section 3.5 of the agreement between Maplehurst and their third-party administrator Which is at page 239 of the record Okay, that's the Maplehurst-Benecor agreement Correct Okay Section 3.5 And that says that Benecor, the third-party administrator or the agent for the plan Shall process, issue, and distribute claim checks as instructed by Maplehurst Okay Reimburse the claim check in this case Pardon? Reimburse the check They did issue a claim check Maplehurst wrote a check on Maplehurst's account to my client Unfortunately, it was not at the reimbursement rate agreed to between the parties And that's why we're here I'm sorry, Mr. Parker You were reading from which paragraph? I'm looking at ER 241 Okay. Your question was where does the third-party administrator get the power to act on behalf of? Section 3.5 at page 239 of the record Okay Now, I'll grant you that there are four contracts And while that may be factually complex, it's completely irrelevant The Foley case, which is cited, says in managed care it is frequently the situation Where there are a series of contracts that contemplate delivering services from one end to the other with the parties not privy to each other That's the reality of it And that's what we have in this situation This comes back to my situation If I Let's say you're a preferred provider with Blue Cross And I have Blue Cross insurance Everything And you have a preferred provider agreement with Blue Cross So that you get the better rate instead of the worst rate And my plan with Blue Cross doesn't cover some pre-existing condition I have Your preferred provider agreement does not have the exclusion for my pre-existing condition It seems to me that your argument would mean that when you treat me for my pre-existing condition You can recover from Blue Cross your expenses for the pre-existing condition Even though my plan doesn't cover my pre-existing condition I don't have those facts in this case But if those were the facts And if Blue Cross independently said they would pay it Yes, I could pursue them And those were the facts in the Meadows case decided That's something different than suing Let's say my condition that's not covered is, I don't know, pregnancy It's very unlikely I'll get pregnant But hypothetically Hypothetically, yeah Because a lot of plans don't cover pregnancy Or at least they didn't used to You've got to pay yourself So I have a plan that doesn't cover pregnancy But you can make my insurance company pay for pregnancy anyway There's a distinction Because your preferred provider plan basically says You get the preferred provider rate for obstetrical care There's a distinction that I'm not getting across And I apologize for that But the distinction is clear in all of the cases that are cited to you by both parties The issue you're addressing And I tried to respond to Judge Talman's point on this What if there's no coverage? Or what if the person isn't eligible? What if they're not an employee? Or what if it's pregnancy and it's under your hypothetical? That's one circumstance And if that's in dispute Then that's in dispute What's in dispute? If coverage or eligibility is in dispute That may or may not involve There's no dispute here Pregnancy is clearly not covered by my Blue Cross Blue Cross Group plan and it clearly is covered by your preferred provider plan So you're saying We won't sue as your assignee on your group plan We'll just sue under our preferred provider plan And get paid for your pregnancy treatment Precise, well, pregnancy treatment It's kind of intellectually It's hard for me to figure out how you're going to incur that expense But Me too It's hypothetical But if you incurred a medical expense Let's say plastic cosmetic elective surgery I mean that's a little easier for me to get my hands around I could use it Don't respond That goes to coverage and eligibility And that's a whole different argument It's a whole different issue Why is it different? Because it's in dispute It's not in dispute in my case All of my rights are guaranteed to me On the preferred provider agreement that the hospital has with Maplehurst And it is that that I am suing on We're arguing about a level of reimbursement here And that is all That is all In that sense It's the same case as Blue Cross versus Anesthesia Associates We're just arguing about level of reimbursement Nothing else is contested So you're saying that in Blue Cross Because the anesthesiologists weren't happy With the amount of the reimbursement rates Independent of any individual claim That might have been made at the time That's irrelevant to our case here Yes In the context of the hypothetical that Judge Kleinfeld presented In that context Blue Cross and Anesthesia Associates Is on point with the case you've got here Granted there are distinctions in that And that's an easier case, frankly It doesn't go as far as I need it to go But in the context of this question It's the same What are we arguing about? We're arguing about the same thing the anesthesiologists were arguing about in that case How much do they owe us under the contract we have with them? And that is what we're arguing Now I think I'm starting to understand your argument So you're saying They agree their plan covers little girls' head injuries Yes No problem there The only problem is How much do they have to pay per day at the hospital? How much do they have to pay for the aspirin and the walker And whatever else the hospital provides you? And there we should get the preferred provider rates And they're paying us the non-preferred provider rates Exactly I hadn't understood the dispute before just now To be about that I thought they had paid you They had paid you preferred provider rates You just disagreed on how much was due Under the preferred provider rates Your Honor You could read the Maplehurst Employee Benefit Plan From start to finish And it is not going to tell you What level of payment my client is entitled to for trauma care Not in there They didn't breach anything in there We're not suing on any provision in there So what's the purpose of the two-year statute of limitation then Under the employer group health care plan? That is the other channel of payment That applies to a quote Claim for benefits Close quote By a quote Covered person Close quote Those are the terms used in that two-year suit limitation And if you look at the definition So as a practical matter It would only apply if the underlying claim was A dispute with a non-preferred provider That didn't have any contractual relationship In practical effect That is true What are you providing the patient? Anything? What are we providing the patient? What are you doing for the patient? Anything? That you're getting paid for? What are we providing the patient? Yeah We treated the patient for traumatic injuries And she incurred expense of $272,000 Now we're seeking payment of that I'm not understanding your question Okay And then the patient hired somebody else to pay that? Well, the patient was entitled to that by virtue of her parents' employment Right Okay Her parents' employer elected to enter into an agreement directly with my hospital And said, we will pay you 100% for trauma care But they never did They never paid 100% You skipped a step there When I was following Judge Beeser's line of questions He was saying he treated the little girl The little girl's mother had paid an insurance company To pay medical expenses that her little girl incurred Yeah No, there's no insurance company involved here This is a self-insured plan But there's re-insurance, right? We don't want to get into that That's not an issue in this application There's no difference They paid a plan You know, the closest case to this The one that I think is most instructive Can I give you another You had said that the only thing that that two-year statute would apply to Is non-preferred providers In response to Judge Talman's questions It doesn't say that in the two-year statute No, but what it does say is that it says this applies to a claim for benefits Which this court has held my claim is not It is not a claim for benefits And it says this applies to a claim by a Quote, covered person, close quote My client is not a covered person I have to seek payment from another avenue And that avenue is the preferred provider agreement I'm not even titled Well, if the little girl wasn't a covered person I mean, if the insurance company had said She's not actually your daughter She's your stepdaughter You've never adopted her And we don't cover non-adopted stepchildren And I don't see where you'd be entitled to get paid I wouldn't There's no question I have a preferred provider My client has a preferred provider agreement That entitles them to 100% for trauma care And lesser percentages for other types of care A condition to the obligation of the employer Is that there is coverage and eligibility Once that condition is satisfied Which is the case you have before you now Then the dispute centers on the preferred provider agreement Well, the only wrinkle in this case is that there Which of course triggers the statute of limitation issue Is the timing of when the claim is submitted for payment Had everything gone right And there not been what I'll call an accounting problem At your client's billing department This $272,000 claim should have been Billed within the two-year period And then the hospital would have fought with the Benecor or the insurance companies Or whoever's actually cutting the check Over how big the check was going to be, right? Well, it was billed within 90 days at the correct amount No, no, no, no, no Let's not play games The trauma occurs There's an initial billing that goes out They get paid on the initial billing But that's not what this dispute is about This dispute is about the fact that they brought in A third-party reviewer years down the road To look at your client's billing And they said, oh, my God, poor little Michelle We didn't ask for enough And now, more than two years later I guess it was four years later You come back and say, we need more money That's why we're here, right? I was responding to a point included in your recitation That is incorrect And I don't know that it's really important But I don't want it to go by me And that is that an incorrect bill was not sent For more than two years That is not correct This trauma occurred in December of 1999 And by April of 2000, three, four months later A correct bill of $272,000-and-some-odd was sent Thereafter, for no apparent reason They sent a check for $45,000 Asserting a discount under a contract that nobody is a party to But you didn't challenge it You passed the check Granted So you accept I mean, I don't know whatever happened to Accord and satisfaction But, you know, there used to be this funny doctrine in law school That said, if you took the money, you waived the claim I don't Apparently, that doesn't work under health care I'll tell you that if this court is going to hold That cashing a check for partial payment Somehow constitutes an accord and satisfaction It's going to be a tidal wave in the health care system It depends on what it says on the check Sometimes it depends on what the papers say But isn't the fundamental question Yeah, ideally, the bill would have gone out It would have gotten paid None of us would be here That didn't happen I think most of us in our practices have sent out checks Where they came with papers saying If you accept this check Yeah, we don't have that With full satisfaction There's nothing like that in this case There's no accord and satisfaction There's nothing like that And I didn't mean to inject that into the case But where I was really going Was my concern that The statute of limitation is at issue here Because had the billing arrangement been different Had the hospital billed Michelle's mother directly And it was incumbent upon her to then present the bill To Benacor or whoever was administering the plan Then there might be an issue here As to whether Michelle's mother could come back More than two years later And say the hospital says I owe more money And the employer might be able to say I'm sorry But this claim is too late That is all correct And with all due respect It entirely misses the point Number one Incidentally My client can't go that direction Under the plan at page 161 We are a preferred provider And we have to submit our claims directly We cannot bill the patient We are precluded We can't balance bill We cannot do that Period Which is why I asked earlier about that The non-preferred provider Because usually in that case Because they are non-preferred They have to bill the patient directly Yes they do Which we didn't do Right And I guess your answer is For all practical purposes The two-year statute really is intended to cover Those situations where for whatever reason The employee who's covered gets a bill And then wants to have the bill paid under the plan And if the employee waits more than two years They might be out of luck No doubt about it If you look at the defined terms In the two-year suit limitation clause Quote benefit close quote Quote covered person close quote Doesn't apply to my client's claim My client's not a covered person And we're not seeking benefits And that last point is big We've gone way over time here Because the case is of sufficient complexity So that it really should have been calendared For 20 minutes per side instead of 10 But I think we probably ought to put it to rest now I'm not coming back up after a council Doesn't sound like it Thank you Your Honor You know for an appellant I kind of like to give them one minute anyway Just as a check and a restraint So plan on having one minute Thank you Thank you Mr. Parker Thank you Your Honors Good morning I'm Michelle Rodosevich Representing Maplehurst Bakeries Any analysis of this case Has to begin as this court did With the plan Because without the plan Maplehurst Bakeries would have no obligation To pay the hospital or anybody else For the healthcare services that were rendered here No other document creates an obligation To pay for services rendered To a particular individual And no other document can modify The plan's conditions on payment The hospital clearly admits That it loses under the plan Even though it originally brought it Summary judgment as an assignee It's now backed away And said that's irrelevant Because they have a separate contract That creates an obligation Independent of the plan There are two problems with this First, the contract in question Does not create a separate payment obligation And second, Maplehurst is not even a party To the contract to which they're pointing Looking at the first problem The contract that the hospital relies on Is still a contract to pay For healthcare services under the plan Both the language of the contract And an examination of the context Lead to this conclusion The contract explicitly incorporates The plan provisions At paragraph 1.04 Which you'll find at ER 116 That paragraph defines Healthcare services or benefits As services that are provided Pursuant to a beneficiary agreement Which in paragraph 1.02 On the same page Is defined to mean plan Read together with the promise to pay In paragraph 2.08 This contract promises to pay For services rendered to a plan beneficiary Say that last thing again What section did you refer to? Paragraph 2.08 Got it Which is two pages later at ER 118 So if you read all these together There is a promise to pay For services rendered to a plan beneficiary Under the terms of the plan And one of those terms Is the statute of limitations Common sense requires That the promise to pay Is limited by the terms of the plan And these are kind of the hypotheticals That you were getting at Judge Kleinfeld The terms of the plan dictate who's eligible The hospital admits it can't bill Maplehurst for Care rendered to individuals Not covered by a plan The terms of the plan dictate What services are covered The hospital admits it can't bill Maplehurst for cosmetic surgery If cosmetic surgery isn't covered by the plan The terms of the plan therefore also dictate When and for how long Services are covered The hospital cannot sue Maplehurst for payment More than two years After the services were rendered And the hospital acknowledges All but the last of that chain of logic The hospital says well of course We can't expect payment for services That aren't covered by the plan Or that were rendered to people That were not covered by the plan But we don't have to abide by The plan's statute of limitations Their effort to distinguish The statute of limitations From other plan terms Has no rational basis that I can see You can't simply announce As they do in their brief That some provisions of the plan Are procedural And therefore do not condition The payment for services And it's also inconsistent For the hospital to cite in its brief And in the handout And the handout That was presented to you earlier And references this morning To the preferred provider Provisions of the plan They're trying to rely on The preferred provider Provisions of the plan Which also I might add Are procedural And yet ignore the statute of limitations Mr. Gosevich What would your response be To what I assume Mr. Parker might say That theoretically we could end up With a hundred different Statutes of limitations Because there are lots of Different employer plans out there But only presumably One preferred provider agreement Between the hospital And in this case Benicor So would your position be That we're still going to have to look At what the statute is Under each of the employer plans To determine whether the hospital Gets paid in an identical plan A two-part answer Number one The preferred provider agreements Generally have prompt payment Provisions in them Including this one And I forget if it's 60 days Or 90 days But I mean at that point You're certainly avoiding Any statute of limitations problems Because you're never going to get Anywhere close to two years Let alone three That's correct And that's probably The primary answer to the question Is the hospital made aware Of the exact contract That the preferred provider Is claiming under At the time the services Are rendered to the patient Is the hospital made  Aware Of the preferred Preferred provider agreement Agreement That is going to control This delivery of service It's not actually It's not actually Clear that it is In a way There are multiple chains Of these preferred provider Organizations out there And it's actually possible for Mine is not an insurance company But an employer Who employed a TPA For a self-insured plan It's possible to use Different paths To get to the hospital Eventually Is there an agency relationship Between the preferred provider And the hospital Between the While the hospital is claiming That it is the preferred provider There I think there may be An agency relationship Between But this isn't brief Between the Preferred provider organization In other words The one that actually Did the billing In this case And made the mistake Logically Could be seen As an agent at the hospital But I Don't know that actually To be the case And that certainly isn't Isn't briefed The agency claim So that would only matter If the hospital was suing Whoever did its billing For messing up Right Which is not the case To put 45,000 And close the file Right Right In fact It's really strange In some respects The hospital relies On this contract Between the third party Administrator And the PPO Because The contract Every time you use An abbreviation I stop listening to you While I try to remember Okay A definition Of the words I was trying to avoid The multitude of names Because The Maplehurst And MultiCare Sound somewhat alike And I've been known To confuse I can't use names either It's functions That really make it Easy to understand It is It is So the third party Administrator Which is Benacorp Which is Benacorp And the PPO network Which is What does PPO mean PPO is Preferred Provider Organization Preferred Provider So the hospital Set up Preferred Provider Organizations And then there's These national outfits Networks That string these Together So that an Employer In Indiana In this case In the sense Of where the Home office Was Has Employees In Puget Sound Those are the deals Where they Knock less off Your bill If you're A preferred Provider That's exactly right What these contracts Basically do Is they trade off Access to Discounted rates For expedited Processing procedures And that's the Purpose In this case Behind Well My They did get A discounted bill And my Client Paid the Discounted bill After Or actually The administrator Paid the Discounted bill After checking About it But I Agree That We're Talking not About what The rate Should be Here That's a Different Lawsuit We're Talking about I mean We're Talking about The statute Of limitations Here Quite Clearly The right To payment Let me Move on To the Contract The Contract That the Hospital Relies on Was made Between the Third party Administrator And the PPO Network So Unless There's Agency Here Between the Third party Administrator And my Client The Employer And some Kind of General Agency There is No Contract Maplehurst Contract With the TPA States That neither Is acting As an agent For the Other That's at ER 236 And that Neither has The authority To bind The other To any Third party So pretty Clear statements They're both In the same Paragraph At ER 236 But I Thought The Provision That Mr. Parker Referred Us To Between Maplehurst As the Employer And Benecor As the Administrator Authorized The Administrator To enter Into agreements With preferred Providers In order To So that The Maplehurst Employees Would have Doctors and Hospitals That they could Go to Under the Plan It doesn't Actually say That. What it Actually says And I don't Have the Language in Front of me But it Says Something About It asks The TPA To Make Maplehurst Aware Of Preferred Provider Opportunities I Think Some Language To That Effect Oh It says 3.17 At PGR 241 Says If the Plan Utilizes A Preferred Provider Organization Propose PPO's With Which The Claim Is That The Language I'm Referring To And So That's Not  Falls Far Short Of Authorization To Enter Into Contracts That Would Bind Maplehurst But This May Not Be A Preferred Provider But We Don't Know How It Will Work Because Because Benecorp Had Gone Through Successive Reorganizations A Real Effort Was Made To Search For Documents That Might Shed Light On That Chain Of Events But There Were No Documents Found Does That Create A Contested Issue Of Material Fact On Which We Need To Look At To Refute Those Statements With     Know Place This Into Play For Somebody Who Was Not A Preferred Provider But Was A Preferred Provider In Terms Of The Payor Plan Then At Best The Hospital Can Look To Benacor Or Somebody Not The Employer For This Amount But It Can't Come Back On The Employer And The Problem With Benacor Is It's Insolvent  Gone Or Has No Assets In Some Kind Of Government Receivership Proceeding In The State Of Indiana Leaving Aside The Receiverships Tell Me If I Understand This Right Hospital Treats A Little Girl Entitled To Insurance Coverage Under Her Mother's Employer Plan Suppose The Only Dispute Was About Whether The Hospital Had Been Paid Under The Preferred Provider Rate I Guess This Wouldn't Happen The Preferred Provider Rate Is Lower Right Than A Non Preferred Provider It's Not That Preferred Providers Get More Money Because You Think They're Really Good Doctors Or Hospitals It's That They Get Less Money Because They've Made A Deal To Take Less Money For A Long Time Let Me Ask You About This Let's Say That The Deal Is Preferred Provider Expedited Payment In Exchange For A Discounted Rate You Didn't Give Us The Expedited Payment You Gave Us The Same Slow Pay That A Non Preferred Provider Would Get And It Adds Up To Hundreds Of Thousands Of Dollars Of Interest And It Adds Up Up To Hundreds Of Dollars Of Interest Up To Hundreds Of           Interest And It Adds Up To Hundreds Of Interest And It Adds Up To Hundreds Of Others With There Right You Have to Comeback Within A Certain Amount Of Time In Order To Do That . The Claim Form The UB 92 Is Standard In The Industry There Was A Box That Should Have Been Coded So That The Payor Knew That This Was Trauma Related Care . Why Is That Not Different From Judge Kleinfeld ? My Answer Is That The Statute Of Limitations Can Be Asserted As A Defense . You Are Talking About Payment For A Particular Individual And The Under That Contract Itself It Requires You To Look At The Plan Terms To Determine Whether That Individual Would Be Eligible To Get Money Under The Plan For The Things That You're Billing For. And Unless That Individual Is Eligible To Get Money . But There Is No Dispute That The Patient Was Eligible   Money Under The Plan . And It  Been Caught Initially Or The Mistake Had Never Occurred In The First Place . Presumably What Would Have Occurred  The First Place . And It Would Have Been Presented To Them And They Would Have Paid It. And They Had Actually Been Involved Early On. Because The Patient Was Eligible To Get Money Under The Plan . And It Was Presented To Them And They Had Actually Paid It. And It Was Presented Early On. Thank you. Counsel. And I urge you to affirm the trial report. Thank you. Counsel. We can't concentrate for much more than a minute I gave you. Thank you, Your Honor. I'm going to use my minute to draw your attention to four cases that are spot on, on the issue that has been discussed for the last hour, which is this dual approach. Pascak cited in the briefs. Coverage and eligibility in this case are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the provider agreement. The hospital's right to recovery, if it exists, depends on the operation of its provider agreement. Precisely the situation we have in this case. In Pascak, the court allowed the hospital to go forward. In Blue Cross, that's out of circuit. Blue Cross versus Anesthesia Associates. The precise argument that Maplehurst is making here today was made in that case. I'm paraphrasing. The payer's overriding contention is that the provider's right to receive reimbursement from the payer depends upon the plan. We hold that the provider's claims, which arise from the terms of their provider agreements and could not be asserted by patient assigners, are not claims for benefits under the terms of the ERISA plan. Ergo, they are not subject to procedural limitations in the ERISA plan. The next case, Cedars-Sinai, your recent decision. A provider's contractual claim against a carrier does not constitute a request for payment of a health-related bill under the plan. Again, I'm paraphrasing. And even if it did, it would not be a claim, quote, under the plan because it is predicated on the preferred provider agreement. The final case, orthopedic surgery. To the extent providers are not being paid the amount to which they are entitled under their provider agreements, they are suing as creditors, and they are entitled to do so. What do we do with the excess insurance contract? They're not even a part of here. Do they commit to apply too? We just heard about it. They're not here. They're not here. No claims are being made against them. That's not an issue on this appeal, Your Honor. That was not addressed at the district court level. Do we have all the necessary parties to resolve this? Oh, certainly. The obligation is between the hospital and the payer. If the payer has some other tertiary relationship where they can go and try to recover from somebody else, which they have asserted in this case. But the employer gets stuck on something that under their promise ended four years ago. Maybe. They don't have to buy insurance, and they certainly don't have to put a suit on it. Let's say they're totally self-insured, no insurance at all. They say we'll pay medical claims that are presented to us, and you can sue us for two years if we have a dispute, and then it's over. We destroy our records. Everything's gone. They didn't do that. And then a claim comes in several years after that. That isn't what they did. They entered into an agreement with my client and elected not to put any suit limitation clause in there. They could have done so, and it is commonly done. They didn't. So it defaults to the statute of limitations under State law. Well, thank you, counsel. This has been very helpful. MultiCare v. Maplehurst is submitted. We're going to take a ten-minute break.
judges: Beezer, Kleinfeld, Tallman